# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KETNUCKY
# BOWLING GREEN DIVISION

**CRIMINAL ACTION NO. 1:14CR-00003-JHM**

**UNITED STATES OF AMERICA**            **PLAINTIFF**

**VS.**

**DAVID LEE ROSE**                **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, David Lee Rose, to suppress any and all evidence obtained in this case [DN 14]. An evidentiary hearing was held on Thursday, July 24, 2014. Jo Lawless appeared on behalf of the United States and Dennis Hardin appeared on behalf of Defendant, David Lee Rose. The parties filed supplemental briefs. Fully briefed and argued, this matter is ripe for decision.

## I.  BACKGROUND

On November 19, 2010, Kentucky State Police Detective Brad Harper received information from the United States Postal Service that a package containing one to two pounds of marijuana was seized in Nevada. The package was addressed to a Derick Stowe at the Defendant David Rose's residence. Detective Harper requested Trooper David Hall conduct a drug investigation on the residence. On November 21, 2010, Kentucky State Police Troopers David Hall and Jason Lanham went to the address in question to conduct a "knock and talk." According to Trooper Hall, the purpose of the visit was to try to make contact with the homeowners or the people involved, try to identify the residents, and then either request consent to search the residence incident to a drug complaint or, if the officer can observe anything in plain view, search pursuant to a warrant.

The testimony received during the evidentiary hearing regarding the contact between the Troopers and the Defendant differs. Trooper Hall testified that he and Trooper Lanham arrived at the residence in the early evening hours of November 21st and were in full uniform and in marked police cruisers. Trooper Hall went to the front door while Trooper Lanham walked to the back of the residence for officer safety purposes. Trooper Hall testified that he knocked on the door and Defendant, David Rose, stepped out onto the porch and quickly slammed the door behind him. Trooper Hall testified that he identified himself, asked Rose his name, and asked Rose if he lived at the home. Trooper Hall stated that he informed Rose that he was looking for Ryan Petty who had an outstanding arrest warrant for failure to pay child support. According to Trooper Hall, Rose indicated that he had never heard of Petty and that Petty did not live there. Trooper Lanham testified that given his location he could not hear Trooper Hall's initial conversation with Rose.

Trooper Hall notified Trooper Lanham through the radio that he had made contact with Rose. Trooper Lanham came to the front of the home. Trooper Hall indicated that he asked Rose who else was in the house or lived with him. Rose advised him that his roommate, Christopher Miller, was inside the home. Trooper Hall testified that he asked Rose if he could step inside and check Rose and Miller's identification and make sure they were who he said they were. According to Troopers Hall and Lanham, Rose invited them in saying "Sure, come on in" and led the way into the home.

In contrast, Defendant Rose and Miller testified that Trooper Hall actually made contact with Miller on the porch of the residence. Miller testified that Trooper Hall requested permission to enter the home under the ruse that the Troopers were looking for a fugitive who just had robbed a female neighbor at gun point. According to Miller, Trooper Hall stated that they were

clearing the neighborhood and wanted to clear the house to make sure the person wasn't in the house. Rose testified that Miller stepped back in the house and informed Rose of the reason for the Troopers' visit. Miller indicated to Rose that the Troopers told him that they had reason to believe the fugitive might be in the house. Miller testified that he permitted the Troopers to come inside out of concern for the safety of the neighbor. Rose testified that he was concerned for his own safety.

Upon entering the house, the Troopers asked for identification from the men. Miller retrieved his identification from his wallet. Rose did not have his identification with him and had to retrieve it from another room. As Rose began to walk into the other room to look for his identification, Trooper Hall asked if he could accompany him to make sure there was no one else in the house and for the officers' safety. Rose testified that he allowed Hall to accompany him.[1] Upon entering a bedroom, Trooper Hall saw a plastic baggie containing suspected cocaine in plain view on top of a dresser. When they returned to the living room, Trooper Hall advised Rose and Miller that he was there on a drug complaint, mirandized them, and then asked about the cocaine. Christopher Miller stated that the cocaine belonged to him. Trooper Hall asked Rose for permission to search the remainder of the residence. According to the United States, Rose initially consented, but when presented with a written consent form, he refused to consent.[2] At that point, Trooper Hall obtained a state search warrant for the residence based upon the evidence observed in plain view in the home. Pursuant to the search warrant, law enforcement seized $6,800 in cash, mushroom grows, marijuana, a loaded firearm, drug paraphernalia,

---

[1] Christopher Miller testified that he actually accompanied Trooper Hall to retrieve his identification. Rose, Trooper Hall, and Trooper Lanham recall that it was Rose, accompanied by Trooper Hall, who entered the bedroom to retrieve his identification. The Court credits the testimony of Rose, Trooper Hall, and Trooper Lanham on this factual issue.

[2] In contrast, Rose testified that he permitted the Troopers to come through the house to search for a fugitive who had just robbed his neighbor at gunpoint. When he was asked again to search the remainder of the residence after Trooper Hall informed him of the drug tip, he declined consent to a search.

ammunition, and digital scales.

Defendant now moves to suppress any and all evidence obtained from his residence on the grounds that the police violated his right to be free from unreasonable search and seizure. Defendant argues that the police, in conducting the knock and talk, used an unlawful ruse to gain entry and conduct a warrantless search of the home.

## II. DISCUSSION

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects" except in limited circumstances. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). According to the United States Supreme Court, "[t]he Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." Georgia v. Randolph, 547 U.S. 103, 106 (2006).

"[C]onsent has effect only if it is given freely and voluntarily." United States v. Carter, 378 F.3d 584, 587 (6th Cir. 2004). The government bears the burden of demonstrating by a preponderance of the evidence, through 'clear and positive testimony,' that the consent was voluntary, unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." United States v. Canipe, 569 F.3d 597, 602 (6th Cir. 2009)(quoting United States v. Worley, 193 F.3d 380, 385 (6th Cir. 1999)) (internal citation omitted). "Whether consent was free and voluntary so as to waive the warrant requirement of the Fourth Amendment is 'a question of fact to be determined from the totality of all the circumstances.'" Carter, 378 F.3d at 587 (quoting Schneckloth v. Bustamont, 412 U.S. 218, 227 (1973)).

"Because '[t]he Fourth Amendment can certainly be violated by guileful as well as

forcible intrusions into a constitutionally protected area,' Hoffa v. United States, 385 U.S. 293, 301 (1966), the use of trickery, deception, and lies by police to gain entry into a home is a relevant factor in the consent analysis." United States v. Boyd, 910 F. Supp. 2d 995, 1002 (W.D. Mich. 2011)(citing United States v. Harrison, 639 F.3d 1273, 1278 (10th Cir. 2011) ("deception and trickery are among the factors that can render consent involuntary"); United States v. Turpin, 707 F.2d 332, 334 (8th Cir. 1983). " 'Trickery, fraud, or misrepresentation on the part of the police to gain entry naturally undermines the voluntariness of any consent.'" Boyd, 910 F. Supp. 2d at 1002 (quoting United States v. Griffin, 530 F.2d 739, 743 (7th Cir. 1976)). As noted by the Sixth Circuit, where "the effect of the ruse is to convince the resident that he or she has no choice but to invite the undercover officer in, the ruse may not pass constitutional muster." United States v. Hardin, 539 F.3d 404, 425 (6th Cir. 2008)(finding consent invalid when officers obtained consent by claiming that a water leak needed investigation); United States v. Copeland, 1996 WL 306556, *3, n. 3 (6th Cir. 1996); see also 2 Wayne R. LaFave et al., Crim. Proc. § 3.10(c) (3d ed. 2007) ("[W]hen the police misrepresentation of purpose is so extreme that it deprives the individual of the ability to make a fair assessment of the need to surrender his privacy . . . the consent should not be considered valid.").

After consideration of the evidence and the credibility of the witnesses, the Court finds that the ruse employed by the Troopers did not violate the Defendant's Fourth Amendment rights.

First, the Court credits the testimony of Trooper Hall regarding the nature of the ruse in question. Trooper Hall testified that he knocked on the door and Defendant, David Rose, stepped out onto the porch. Trooper Hall stated that he informed Rose that he was looking for Ryan Petty who had an outstanding arrest warrant for failure to pay child support. According to

Trooper Hall, Rose indicated that he had never heard of Petty and that Petty did not live there. Trooper Hall testified that he asked Rose if he could step inside and check Rose and Miller's identification and make sure they were who he said they were. According to Troopers Hall and Lanham, Rose invited them in saying "Sure, come on in" and led the way into the home.

While there is disagreement concerning whether Defendant Rose or Miller answered the door, the Court finds this issue of no consequence to the resolution of this matter. Instead, the essential question before the Court is the nature of the ruse and whether it violated the Defendant's constitutional rights. Even if Trooper Hall mistakenly believed Rose rather than Miller answered the door, at no point did Trooper Hall waiver on what he said to the person who opened the door. At the hearing, Trooper Hall presented himself in a professional manner and no evidence was presented at the hearing that called into question Troopers Hall or Lanham's credibility.

Second, the Court finds that this ruse did not present "a situation in which an individual would feel 'no choice but to invite the . . . officer in.'" Hardin, 539 F.3d at 425. In the present case, Troopers Hall and Lanham never misrepresented their identities as members of law enforcement. They arrived in full uniform and marked police cruisers. While Trooper Hall admittedly did not advise Rose of his interest in a drug investigation, the Troopers did not create a sense of exigent circumstances, urgency, or compulsion to gain Rose's consent to enter the home or accompany Rose as he moved from room to room. See, e.g., United States v. Monzon-Luna, 2013 WL 6175818, *5 (E.D.N.Y. Nov. 22, 2013). Instead, Trooper Hall informed Rose that he was looking for an individual with an outstanding arrest warrant for failure to pay child support. Trooper Hall requested permission to enter the home and check Rose and Miller's identification and make sure they were who he said they were. A search for an individual

wanted for child support is distinguishable from a search for a missing child, a kidnapping victim, a water leak, or a gas leak. Hardin, 539 F.3d at 425.[3] At all times, Rose maintained the ability to make a fair assessment of his ability to grant or deny law enforcement requests to enter his premises to check their identification. See 2 Wayne R. LaFave et al., Crim. Proc. § 3.10(c) (3d ed. 2007).

Accordingly, the Court finds that Defendant Rose knowingly and voluntarily consented to Troopers Hall and Lanham's entry into the home and to Trooper Hall's accompanying Rose to locate his identification. Therefore, Defendant's motion to suppress is denied.

### III.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, David Lee Rose, to suppress [DN 14] is **DENIED**.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

August 20, 2014

---

[3] See also United States v. Montes–Reyes, 547 F. Supp. 2d 281, 291 (S.D.N.Y. 2008); U.S. v. Vazquez-Velazquez, 2012 WL 917845 (N.D. Ga. Feb 23, 2012; United States v. Hernandez-Juarez, 2009 WL 693172 (W.D. Tex. March 16, 2009).